Mr. Feldman, you've reserved seven minutes for rebuttal. Is that right? Yes, Your Honor. Okay, please go ahead whenever you're ready. Good morning, and may it please the Court. This is not a technical appeal. The Board's errors go to the heart of the defect with respect to Claim 11 of the 291 patent. Haskell, along with extensive other prior art, disclosed the, quote, predefined period of time, close quote, limitation in Claim 11. We raised many issues in our briefs. I'd like to, subject to your questions, focus on two areas during my time. First, the Board's conclusion that Harmonic's reliance on the Haskell disclosures violated the reply regulation. And second, that the Board could ignore extensive admitted prior art by invoking redundancy. Can you address the second issue first? Yes. I will address it first. There were a few undisputed facts that I wanted to get through, if it would be okay with Your Honor, and then I'll get to that. Just three undisputed facts that I think then will bear on the redundancy. During the prosecution, the applicant responded to requests from the examiner for more detail on various elements by conceding that every component was known in the prior art, so that no additional detail was required. The only novelty was the arrangement of those known components in a parallel configuration. That's in the record at A205, which is the prosecution history, and it's in the Zager Declaration, paragraphs 21 through 29, at A111-13. Two, both the 291 patent and Haskell are designed to enable video decompression with no gaps between the different streams. Claim 11 uses the phrase, quote, predefined period of time, close quote. Haskell uses the phrase, quote, predetermined system timing, close quote. There is no substantive difference between the two, and my best authority for that is my friends on the other side of the aisle. Even AVID uses the terms interchangeably. For example, in counterstatement of issues number two, AVID referred to, quote, the missing limitation of claim 11, providing a second set of video data at a second rate, quote, a predetermined period of time, close quote. After the first set of video data starts to be received, close quote. Also in the record at A527, in the AVID brief at four, you see those two terms being used interchangeably. Finally, and then I'll turn to redundancy, the only evidence that was before the Board, as opposed to argument by lawyers, was the Zager Declaration. AVID didn't submit any counter-evidence or a deposed Dr. Zager, and the Board repeatedly relied on Dr. Zager in invalidating claims one through ten. I just wanted to flag for you the key paragraphs in which Zager addressed the disclosures related to predefined time, both in the Haskell patent and in the admitted prior art. Those are paragraphs 27, 29, 71, 73, 129, 276, and 282. And with that, thank you for your patience. I'm going to skip over the scope of reply and go first to the redundancy. I think I misspoke. What I want to hear about is why it is that you think that Haskell teaches the predetermined system timing as required by the claim, or predetermined time, as required by the claim. As I understand it, you have two different theories or arguments for why it is that that element is met by Haskell. Is that correct? I wouldn't have characterized it as two different ones. I think that Haskell repeatedly, both by its use of the term and in its operation, satisfies that element. How is it that the multiplexer satisfies that element? The multiplexer doesn't. It's the encoder. And as the board found repeatedly on all the prior claims, claims 1 through 10, the encoder qualified as the switch. So Abbott's argument was all of that, and it was their first argument on claim 11. All of that is irrelevant because that all happens at the encoder level, but the board had already found that the encoder satisfied the requirement of a switch. I've looked at Haskell, and right now I don't understand how Haskell, anything in Haskell, everything in Haskell, how any of it discloses sending a video data stream to a second decoder at a predefined period of time after a first decoder has received its video data stream. Do you have two specific references in Haskell, Your Honor? The way I look at Haskell is it's a GARN variety multiplexer, demultiplexer system. And I don't see anything in Haskell's encoder system as having any kind of intelligence where it is designing by a certain time, ensuring that a second decoder on the back end is receiving a video data stream at a predefined time. And I don't see anything in Haskell's encoder system as having any kind of intelligence where it is designing by a certain time, ensuring that a second decoder on the back end is receiving a video data stream at a predefined period of time after a video stream has already been sent to a first decoder. Let me try to show you that. If you look at column 2, lines 41 through 44 of Haskell, it states, quote, the encoder bit rate for each encoder is controlled to prevent its associated encoder and decoder buffers from overflowing and underflowing, close quote. If you then turn to column 13, lines 35 to 54, it states, quote, as in the system of figure 1, each decoder waits exactly LP seconds after arrival of the first bit of information before starting to decode, close quote. The system knows when the decoder will begin decoding. It knows how fast it decodes. The encoder knows the size of the buffers. It knows the bit rate. It knows the amount of time it takes to decompress the data and the switchover from stream 1 to stream 2. This is all laid out in Zeger paragraph 282 at A168, which is where he addresses Haskell on claim 11. I didn't see anything in Haskell that's talking about some kind of predetermined timing relationship between two video bit streams being received by two different decoders. Well, I understand there's an encoder bit rate controller that's setting up different bit rates for encoding on the front end and transmitting those. And then they arrive at a certain time through the channel after everything gets multiplexed together. But I'm talking about this particular limitation that's talking about this particular relationship of a predetermined time between the receipt of two different video streams at two different decoders. I believe, Your Honor, if I understand you, that at column 13, line 7, which Abbott had said, quote, as in the system of figure 1, each decoder waits exactly LP seconds after arrival of the first bit of information before starting to decode, close quote. And then line 8, which is pointed out below, it begins periodically according to predetermined system timing to be described. So to the extent you're looking for that reference to predetermined system timing, it's there. And with respect to multiple streams, we're relying below not just on Haskell, but also on Rossmere. And the other admitted prior art referred to the parallel configuration. Mr. Feldman, you're into your rebuttal. Did you want to talk more about the redundancy issue, or do you want to reserve your rebuttal? I gave my – I erred on the side of rebuttal time. So if you can stand me for a few more minutes. What I really want to talk about is the error on saying that we raised an issue in the reply inappropriately. Unless you feel that you don't need me to address that. With respect to that, the relief we would request is a remand. As you recall, the board concluded that our argument is to Haskell 13.7, which I just read to you, which showed the language on timing. The board concluded that that was outside the scope of reply because it had not been raised in the avid opposition brief. And it's such an obvious error, I don't understand how they got it wrong. I say that with great respect for the office. But the avid reply asserted that Haskell did not account for or teach the predetermined period of time limitation. And they cited Haskell, and that's what we responded to in the reply brief. So it seems to me to be clear error. You don't even need to get to a substantial evidence standard. The board got it wrong that this was new in the reply and they should have reached it. On redundancy, what I want to say is, although there are interesting, nay, potentially cert-worthy issues on the question, I don't think the panel needs to reach them at all. I think it's sufficient to say that in these circumstances, where the board in its initiation decision had said, we're not going to reach any of the admitted prior art, just Haskell, because the only issue is parallel configuration. And Haskell and Rossmere are enough on that.  In the final written decision, the board went off on predetermined system timing. And in light of that, the admitted prior art was no longer redundant. It went to the heart of the issue, and what the board properly should have done there is said, well, since we're not persuaded on Haskell as to claim 11 and predetermined system timing, we better take a look at the admitted prior art. And just then I'll sit down. Could it do that when it already denied those grounds? I mean, it didn't park those other grounds. It formally denied institution of those grounds. Did it even have the power or jurisdiction to undeny those grounds? I don't think they denied those grounds in the sense that one would normally view a rejection on the merits. They said, we're not considering them. And I agree that for due process purposes, they then would have had to say, kind of as they did in Liberty Mutual at an earlier phase, they would have said, let's have you address this. Did you request or make a motion to have them request or to consider these denied grounds? There was no need to until in the final written decision the board changed its position on claim 11. And then did you after that? No, we didn't, Your Honor. We didn't after that. Lest you think that this redundancy issue is just another lawyer argument, I would address you to one particular component, and that's the stream scheduler 150, which is a big deal in the 291 patent in terms of timing. It was admitted prior art. It's in the Zeger declaration at paragraph 27, but let's just read what the applicant said when the examiner asked for more detail about it. Quote, stream scheduler 150 does supply certain instructions to microcontroller 110. However, these are of a routine and well-known nature, ellipses. Also, as their generation and operation are well-known in the art, no detailed description of them was believed necessary. Close quote. That's in A205. And that's the type of admitted prior art that the board never got to. Thank you for your patience. Mr. Kastanis, you have 10 minutes, right? Correct. Good morning, Your Honors, and may it please the Court. The two issues I want to address today first are the failure to raise this issue in the petition and why the board was correct in not considering this argument. The second issue I want to address also is the related issue of the alternative holding of the board, which was that the other side had failed to meet its burden of proof and that the evidence that it submitted in reply was not adequate. That wasn't even addressed in my friend's opening brief. That argument came in the reply brief. Once again, a case of the argument coming too late, and it's wrong for all the reasons, Judge Chen, that you asked my friend about with regard to the Haskell reference. But let me start with the reply regulation. My friend seizes on the language of Section 42.23b that says a reply may only respond to arguments raised in the corresponding opposition. But what he ignores is the prior sentence, which says, all arguments for the relief requested in a motion must be made in the motion. Here, that motion is the petition. The petition, at page A91... Does the word motion encompass the petition? I think under the board's practice that is exactly what it's talking about because it is talking about the patent donor's reply in this subsection. Well, in any event, why didn't they preserve the issue in the petition when they clearly did reference Haskell? If you look at page A91, it's not just a reference to Haskell, but it's a reference to the predefined period of time limitation. What you don't see at page A91 where Claim 11 is discussed in that one single paragraph, you see the first sentence is simply a recitation of the claim language in shorthand. And then what is offered after that is for example, Haskell teaches the ability, by the way, that's capability language, that's not actually a teaching or a disclosure, but capability to individually control bitrate. Well, controlling bitrate doesn't have anything to do with the predefined period of time. It also talks about the ability to switch packets. Well, that's not the predefined period of time. And then it cites the demux switch of Haskell in figure 3. Now, that's on the decoder side of the channel, the demux switch is, and figure 3 describes the function of the demux switch. It's not as if they ignored the limitation entirely though, right? I mean, they do have up just a little bit further, they do refer to Haskell discloses dot, dot, dot, a predefined period of time. Right? Well, Judge Stoll, that's exactly what it says, but that's exactly, all that is, that first sentence that you just read to me, is the claim language. That's just the claim language recited. If this case were in district court, for example, this would be a conclusory expert testimony that couldn't support a verdict or could no return a verdict. Would it be in your view that a new portion of a prior reference or a separate portion, a different column and line number could never be relied on in a reply brief? I don't think I have to go that far and certainly the court wouldn't have to go that far, but what you do have here is a complete and utter failure to discuss that one particular limitation of Claim 11. A complete and total failure of proof. It's a failure of an essential element of the case. And if you look at, you know, we're being credited for having raised the issue that Harmonic then had to reply to, but if you in truth, if you look at page A527 and look at where we did respond, we simply said, they haven't addressed this. And what 4223 says is you're allowed to say, oh yes, we did address this. But they don't claim to have addressed it. And the only submission they even made at page A547 is an even shorter paragraph where they say, Haskell explicitly discloses the use of predetermined system timing with regard to providing video data to decode buffers. But again, as Judge Chen pointed out in his colloquy with my friend on the other side, that's not enough. It's not just picking out predetermined and predefined and saying, well those sound like the same and the word time is in there also. And system time means something that isn't in period of time. But it's really, what is that time about? It's about when you start the second stream of programming. Haskell doesn't say anything about starting a second stream of programming or anything about that at all. And that's the entire limitation. It's not just predefined period of time. The limitation that was not proved was when the first video array begins receiving the video data at the first rate. I see here at A91 they also cited column 13 lines 35 through 54 with respect to this particular claim limitation. Yes, but they are citing it strictly with regard to you'll see DMUX switch 203 of Haskell exhibit 108, which is Haskell. And figure 3, 1335 to 54 period. But often claim limitations have been met. That's not enough. That's not enough. There's no showing whatsoever that the predefined period of time after the first video array begins receiving the video data limitation is met. So this court should affirm for either or both of two reasons. One, the issue wasn't properly raised and two, the issue was correctly in the alternative decided by the board. And I will point out one last thing with regard to that last issue, which is that the board's alternative holding was not challenged at all in the opening brief in this court. It only was the reply brief when they first said, well, gee, that wasn't enough to satisfy this court's decision in Gechter versus Davidson. It's not enough to permit meaningful appellate review. Well, a total absence of proof it doesn't take more than a couple of sentences to be able to say that. And quite honestly, they gave more attention to this issue in the board decision than Harmonic ever did before the board. Lastly, even on the substance Haskell doesn't teach what they say it teaches. Unless the court has further questions for me I'll give the rest of my time to Mr. Wiedenfeller. Okay. All right. Mr. Wiedenfeller. Thank you, Judge Chen, and may it please the court. I'd like to start with Your Honor's point that Your Honor made earlier in the opening argument about how when the board instituted this trial the jurisdiction of the board was limited to those grounds on which it instituted. The other grounds were not something that the board could revisit later in the proceeding. A decision denying a ground for 108B of 37 CFR is a denial of institution. And a denial of institution is something that this court simply cannot review under the St. Jude decision. Just curious, are there other instances where the board elects to grant all the grounds that it really does believe there's a reasonable likelihood that claims are more likely than not unpatentable, but then the board will, after granting all the grounds, elect to put on the shelf all but one and then go forward on a trial with one and then just leave the other three or four just in case, backstop in case the one ground that they go forward on ultimately proves unconvincing? The board does not do follow that procedure in AIA trials. It does do that in its appeals in certain situations. And, for example, in intraparties reexaminations that involve a lot of issues, the board may focus on a particular issue, but in an AIA trial, the scope of the trial is what is instituted in the institution decision. And why doesn't it do the way I just suggested? It's for efficiency purposes and for due process purposes as well. The efficiency is in the board crafting a scope of a proceeding that it knows it can handle and it knows it can satisfy and complete in the one-year time frame it's given under the statute. And doesn't it look more like a case management issue, like what Harmonic was suggesting in its brief? It is, in some ways, a case management issue, but it is a determination not to institute on a particular ground and that is something that isn't reviewable, whether it's a case management decision or a decision on whether it met the threshold for instituting an IPR. And the due process concern is that the parties need to be aware during the proceeding of what issues they need to raise. And I think one thing that's very clear from this record is that the parties were well aware that these issues could not have been raised during the proceeding. And I'll just take one example at page 8-536, which is from the petitioner's reply here. It says the following grounds were not instituted due to redundancy. One, admitted prior art, APA, and Allen. Two, APA and Hong. Three, Peck and Rossmuir. And four, Peck, Rossmuir, and Haskell. It was well aware that these grounds were not instituted and were not part of the proceeding and it followed through with that approach. If there are no further questions, I'll yield. Does the agency have the right to deny a petition for any reason? Yes, Your Honor. To have that much power and discretion? The statute provides when the director may not institute a proceeding. It does not ever indicate when the director is required to institute a proceeding. And Congress was very clear that it was very concerned about the agency's ability to perform these new proceedings efficiently and to complete them in the one-year time frame it set forth. And it made very clear throughout the statute that the agency can consider its ability to complete the proceedings. It went so far as to say that the agency could just stop instituting proceedings at all for a particular year during the first four years of the AIA if it thought it could not handle the proceedings. So given all the concerns about statutory estoppel and petitioners are required to bring to the table, the agency, every single possible ground of unpatentability that it is aware of, aren't there estoppel concerns if the agency only elects to go forward one-on-one? Well, we think the court need not reach the estoppel in this case because it's not presented in this case. But our view is that the estoppel does not apply to grounds that were not raised during the proceeding. And the clearest way to show that a petitioner could not reasonably have raised grounds in a proceeding is to try to raise them and have the board tell them they cannot raise them during the proceeding. The statutory estoppel is limited to what's in the final written decision and grounds that were raised during the proceeding. And it's very clear from this record that the petitioner here, Harmonic, could not reasonably have raised the admitted prior art grounds or the PAKE grounds or any of the grounds on which the board did not institute. So we don't think the estoppel would apply to them in this situation in district court. Do you think the regulation here was applied correctly when the board said they're not going to consider the petitioner's reply on Haskell? I'm not familiar with this particular fact. They cited the very column of Haskell that they cited to again in the reply and admittedly a paragraph above the paragraph they cited earlier. But for whatever reason the board said, well that's a different paragraph so we're not going to consider it. I think what the board was saying was that there was an additional argument being made and that perhaps they cited to something in the initial petition but being called out for not having made any argument about it does not allow you to make an argument about it. Instead, a fair reply to being called out for not having made an argument is to show that you did in fact make the argument not to make the argument anew. And I think that's the board's approach and I don't think it views its discretion in declining to consider that aspect of the reply. One housekeeping question. There's another appeal in this courtroom after this appeal that's from the PTO and there's nobody defending the board's decision in that case. Do you have any idea why? That's correct, Your Honor. It's an interference case and we did at the PTO consider whether or not to intervene and one of our considerations in whether or not to intervene in the case is protecting the public interest and we don't see that concern in interference cases where it's deciding which particular party gets a patent. There's no real public interest in who gets a patent. We have a public interest in defending decisions as to patentability that the agency makes but we have less of an interest in defending the particulars of which patent owner is able to have a patent. Or decisions you might disagree with. Well, I don't think that it should be taken as an indication or an admission that the agency disagrees with the position if it does not intervene. Thank you. Mr. Solman, we'll give you four minutes of time. Go ahead. Thank you, Your Honor. At the risk of being redundant, let me pick up on something that counsel for the Patent Office said. He said estoppel's not a factor here. Well, we hope it's not a factor. But that's our concern on the redundancy ground. In the government's brief, it said there would be no estoppel here. But if you noticed, AVID didn't say that in its brief. And my partner, Mr. Yun, is going to go back and try what's left, Claim 17-20. And it wouldn't shock anybody if there AVID took the position that we're stopped from raising the admitted prior art because it had been presented to the Patent Office. And as you said, well, maybe they rejected it. Did they put it aside or did they reject it? So if I got nothing else from the panel but a clear ruling that there's no estoppel on grounds presented to but not ruled upon by the PTAP, that would almost make the trip worthwhile. That would technically be an advisory opinion, right? We don't have those facts in front of us. I mean, I see your point that those alternate grounds, you know, you could not raise them in this particular proceeding. They were, in fact, not raised because you were blocked from raising them. So I completely understand the point why there maybe shouldn't be an estoppel here. But I don't know if that means that we can actually opine on that. I prefer to call it teaching rather than an advisory opinion. And it would certainly be of use to the district court deciding the case, I think. On redundancy, I want to reiterate, one could, given what this court is doing with various procedures that PTAP is adopting, one could imagine you ruling, if the issue were squarely presented and unavoidable, that they can't just punt on an issue, that it isn't permitted by the statute. They can say we're too busy. They can say this is redundant of another proceeding, but that in a proceeding, they've got to reach them all. But you don't need to do that here. This is a much simpler case on redundancy grounds, which is, having changed the board's view as to Claim 11 and Haskell, you then needed to reach the admitted prior art because it was squarely in place. I want to talk briefly about Abbott's comments on how they were sandbagged. And as Werner Wolfe used to say, let's go to the videotape. This is Abbott's response below. A526-27. Quote, there is no providing video data to the remaining video decompression arrays, ellipses, a predefined period of time after the first video data array begins receiving the video data at the first rate. Close quote. And that's what we responded to. So whether or not the exact words were in the petition or not, it can't be we're all lawyers. It can't be that when you're doing a reply brief and the opposing party in their opposition brief says X is not true, that you're not allowed to say actually X is true, which is what we did here. With respect to this not being in the petition, again, and I'm now talking just about Haskell, not about the voluminous admitted prior art, with respect to Claim 11 in paragraph 129 of Zager, which was all tied up with the petition, Dr. Zager said, Claim 11 describes usage of the aforementioned system of known components in a known arrangement as fully disclosed in admitted prior art, including Allen. For example, operation of the first switch is merely operation of a prior art component in a known arrangement so as to cause the video data decompression arrays to receive data at some controlled rate at some predefined period of time after the change in state. So the notion that we didn't address predefined period of time until the reply brief is not correct. The other portion that, again, I would direct the court to is Haskell. I appreciate your patience and generosity and I'm happy to submit.